**IN THE COURT OF APPEALS OF IOWA**
No. 23-0235
Filed May 10, 2023

**IN THE INTEREST OF A.B., A.B., and A.W.,**
**Minor Children,**

**K.W., Mother,**
          Appellant.
_____

Appeal from the Iowa District Court for Linn County, Cynthia S. Finley, District Associate Judge.

The mother appeals the termination of her parental rights to three children. **AFFIRMED.**

Mark D. Fisher of Howes Law Firm, P.C., Cedar Rapids, for appellant mother.

Brenna Bird, Attorney General, and Anagha Dixit, Assistant Attorney General, for appellee State.

Kimberly A. Opatz of Linn County Advocate, Cedar Rapids, attorney and guardian ad litem for minor children.

Considered by Bower, C.J., and Tabor and Greer, JJ.

**GREER, Judge.**

The juvenile court terminated the mother's parental rights to A.B. (born in 2019), A.B. (born in 2019), and A.W. (born in 2021) under Iowa Code section 232.116(1)(h) (2022).[1] The mother appeals, arguing (1) the children could have been returned to her custody at the time of the termination trial; (2) the loss of her rights is not in the children's best interests; and (3) termination will be detrimental to the children based on the closeness of the parent-child relationships, so a permissive factor should preclude termination. Alternatively, the mother requests additional time to work toward reunification. We review termination proceedings de novo. *In re Z.K.*, 973 N.W.2d 27, 32 (Iowa 2022).

We begin by considering whether the State proved the statutory ground for termination. *In re P.L*, 778 N.W.2d 33, 40 (Iowa 2010). The juvenile court terminated the mother's parental rights to all three children under paragraph (h), which requires proof of several elements not at issue here and that the children cannot be returned to the parent's custody at the time of the termination trial. *See* Iowa Code § 232.116(1)(h)(4); *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (considering whether the child could be returned home "at the time of the termination hearing" when reviewing termination under section 232.116(1)(h)(4)). The mother focuses on progress she made in the month before the January 2023 termination trial, noting she recently obtained a new job, was leasing a three-bedroom home, and was actively engaged with Alcoholics Anonymous. But she ignores her longstanding and apparently ongoing issues with methamphetamine.

---

[1] The father's parental rights were also terminated to all three children; he does not appeal.

The two oldest children—A.B. and A.B.—were previously removed from the mother's care in April 2020 and adjudicated children in need of assistance (CINA) due to substance-abuse issues and domestic violence in the mother and father's relationship. A.B. and A.B. were returned to the mother's care in July 2021—a few months after the birth of A.W.—and the CINA case closed in February 2022. The present case was opened just a couple months later, again with concerns the mother was using methamphetamine and, this time, also with concerns that A.W. was being physically abused. All three children were removed in April 2022 and then drug tested; the results showed all three children had ingested methamphetamine. Between May and October, the mother returned seven sweat patches that were positive for methamphetamine and a urine sample collected in September also tested positive.[2] After that, the mother quit participating in drug testing. But even by her own testimony, the mother used methamphetamine in late November. The mother did not engage in substance-abuse treatment between her last admitted use on Thanksgiving 2022 and the January 13, 2023 termination trial, although she testified she expected to begin a dual mental-health and substance-abuse program in February. The mother has not established any period of sobriety since this second CINA case opened in April 2022.[3] And she cannot safely parent these children while using methamphetamine. *See, e.g.*, *In re J.S.*, 846 N.W.2d 36, 42 (Iowa 2014) ("[A] juvenile court could reasonably

---

[2] The mother provided a few urine samples that were negative.

[3] We recognize that, while admitting to using methamphetamine in April and November 2022, the mother generally denies the accuracy of her numerous positive drug tests. Like the juvenile court, we are not persuaded by the mother's testimony.

determine that a parent's active addiction to methamphetamine is 'imminently likely' to result in harmful effects to the physical, mental, or social wellbeing of the child[] in the parent's care."). We agree with the juvenile court that the children could not be returned to the mother's care at the time of the termination trial. *See In re M.S.*, 889 N.W.2d 675, 680 (Iowa Ct. App. 2016) (noting a child cannot be returned to the custody of the parent if doing so would expose the child to any harm amounting to a new CINA adjudication).

Next, the mother argues termination of her rights is not in the children's best interests because of the bond each child shares with her and the bond the children share with each other. In considering the best interests of the children, we are required to use the best-interests framework set out by our legislature. *See P.L.*, 778 N.W.2d at 37. And that framework does not include the word "bond."[4] *See* Iowa Code § 232.116(2). Rather, as mandated, our "primary considerations are 'the child[ren]'s safety,' 'the best placement for furthering the long-term nurturing and growth of the child[ren],' and 'the physical, mental, and emotional condition and needs of the child[ren].'" *P.L.*, 778 N.W.2d at 37 (quoting Iowa Code § 232.116(2)). The mother is still in the throes of addiction. She testified she had not used the drug for approximately six weeks, but the mother's testimony is not supported by any other evidence due to her refusal to participate in drug testing. At trial, the social worker for the Iowa Department of Health and Human Services testified she has concerns the mother continues to use because of

---

[4] Consideration of the bond or close relationship between the parent and children is more appropriate under step three of the analysis, when the court considers permissive factors that may preclude termination. *See* Iowa Code § 232.116(3)(c).

> [the mother's] lack of drug testing. Typically, if a parent is not using substances they like to demonstrate that through negative drug test results. Her lack of communication in regard to not participating in her Family Treatment Court hearings, being very distant when she does reach out or send texts, it's very demanding behavior. Her withdrawing and being absent is usually an indicator of use for someone who is involved with the [d]epartment, they don't want the professionals involved to see them.

And the mother apparently recognized the need for further treatment, as she testified she would begin the dual diagnosis program in the near future. Additionally, we note both A.B. and A.B. were socially and developmentally delayed when they were removed from the mother's care in April 2022, which the social worker suggested was a result of their basic needs not being met. And, as of yet, the mother has not shown progress in the romantic relationships she chooses. The first CINA case was opened due, in part, to domestic violence in the relationship between the mother and the children's father. After that, the second CINA case was opened with allegations A.W. was physically abused by the mother's new boyfriend; the mother initially refused to give the man's information to the department because he had an active arrest warrant. And, at the termination trial, the mother testified about a different boyfriend, whom she acknowledged the department would not approve to be around the children. Overall, termination is in the best interests of these children based on both their immediate and long-term interests, as the mother cannot keep the children safe or be relied upon to consistently meet their physical, mental, and emotional needs.

The mother asks us to apply the permissive factor in section 232.116(3)(c) to foreclose termination. Section 232.116(3)(c) allows the court to forego termination when "[t]here is clear and convincing evidence that the termination

would be detrimental to the child at the time due to the closeness of the parent-child relationship." The mother has the burden to convince us to apply the permissive factor. *See In re A.S.*, 906 N.W.2d 467, 475–76 (Iowa 2018) (holding that "the parent resisting termination bears the burden to establish an exception to termination" and recognizing that it is up to the court's discretion whether to apply a factor). When asked at trial to describe her relationship with the children, the mother testified, "Good." When asked if the children would be harmed by the termination of her rights, the mother testified, "Absolutely" because "[i]t's another trauma, and I just didn't think about this and that and—and I mean, that has caused me so much pain." The mother gave testimony that she shares a "strong bond" with the children; the social worker agreed the mother shares a bond with the oldest two children and a lesser bond with the youngest. But the existence of a bond is not enough. *See id.* at 476 n.3 (acknowledging "there is evidence of bonding between the mother and the child" but concluding section 232.116(3)(c) did not apply because "nothing in the record . . . provides 'clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship.'" (quoting Iowa Code § 232.116(3)(c)). And the mother failed to provide clear and convincing evidence that the children will be disadvantaged by termination and that any disadvantage overcomes the mother's inability to provide for the children's developing needs, *see D.W.*, 778 N.W.2d at 709, so we do not apply the permissive factor.

Finally, the mother asks for more time to work toward reunification. Additional time is appropriate only if we can conclude "the need for removal . . . will no longer exist at the end of the additional six-month period." Iowa Code

§ 232.104(2)(b). We hope the mother gains a great deal from participating in the dual-diagnosis program. But, at the time of the termination trial, the mother was still at square one. We will not ask the children to wait longer for permanency on the mere hope that this time will be different and the mother will achieve long-lasting sobriety. *See In re J.S.-M.*, No. 21-0927, 2021 WL 4304213, at *3 (Iowa Ct. App. Sept. 22, 2021) (affirming the juvenile court's refusal "to delay permanency 'on the mere hope' that the father would soon learn to become a self-sufficient parent"); *see also In re B.A.*, No. 11-1507, 2011 WL 5868301, at *2 (Iowa Ct. App. Nov. 23, 2011) (affirming termination when the father's "progress was not sufficient to show more than a mere hope that he might eventually be able to parent the child safely and consistently").

We affirm the termination of the mother's parental rights to all three children.

**AFFIRMED.**